IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| **TRANSAMERICA INVESTMENT GROUP, INC. dba SKY CARGO SOLUTIONS, INC.** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:12-cv-01102** |
| **TRAVIS M. HAMILTON,** | § § | |
| **Defendant.** | § § | |

## JOINT PRETRIAL ORDER

### Appearance of Counsel

1.      The attorney of record for Plaintiff is William W. Rucker, 3355 West Alabama, Suite 825, Houston, Texas 77098; Telephone 713-528-2800; rucker@wwrucker.com.

2.      The attorney of record for the Defendants is Derek D. Rollins; Shackelford, Melton & McKinley, LLP; 3333 Lee Parkway, Tenth Floor, Dallas, Texas 75219; telephone (214) 780-1400; drollins@shacklaw.net.

### Statement of the Case

3.      Plaintiff has sued Defendants for breaching an alleged contract with Defendants for a commission of $50,000 per aircraft for finding debt financing for a portfolio of six (6) late model Citation X aircraft in a transaction in which Defendants were involved.

<u>Jurisdiction</u>

4.      This Court has jurisdiction via the granting of a Petition for Removal filed by Defendants 28 U.S.C. §1332.

<u>Motions</u>

5.      Plaintiff's Motion for Summary Judgment predicated on breach of contract is currently pending.

<u>The Parties' Contentions</u>

6.      Plaintiff contends that Defendants, after being unable to find the necessary financing, asked Plaintiff to find debt financing for the acquisition of six (6) late model Citation X aircraft. Plaintiff thereafter contacted PNC Aviation Finance, a division of PNC Equipment Finance LLC, which is a subsidiary of PNC Bank, National Association. PNC Aviation Finance did finance the debt financing for this transaction. On July 17, 2009 Defendants and Plaintiff modified the commission that Plaintiff was to receive. Instead of the standard agreed one percent (1%) fee the parties had originally agreed on, Defendants stated that they would pay Plaintiff a commission of $50,000 per aircraft ($50,000 x 6 = $300,000) with payments to be made as each aircraft was sold. The foregoing terms were set forth in a July 17, 2009 email from Defendant to Plaintiff. That Plaintiff fully performed under the contract by finding PNC to provide the necessary financing. That Defendants have failed to pay the contract commission to Plaintiff.

7.      Plaintiff alternatively contends that it performed a valuable service on behalf of Defendants which Defendants accepted and for which Defendants knew Plaintiff expected to be paid. That the reasonable value of Plaintiff's services was not less than Three Hundred Thousand and no/100 Dollars ($300,000.00).

8.     Each of the aircraft were sold but Defendants have failed to pay Plaintiff the commission to which Plaintiff was entitled and Plaintiff has brought this suit for breach of contract to recover the aforesaid commission, interest, legal fees and court costs.

9.     Alternatively, Plaintiff found PNC to provide debt financing for the Defendants' transaction. These were valuable services that were accepted by Defendants. The Defendants had notice that Plaintiff expected to be paid for its services. Plaintiff brings this suit to recover the reasonable amount of its services, not less than $300,000.00, together with interest, attorney fees and court costs.

Defendants make the following contentions:

10.     Defendants have denied liability to Plaintiff for breach of contract and quantum meruit and have further alleged that Plaintiff's claims are barred because Plaintiff failed to perform conditions precedent, that there was a failure of consideration, that the alleged offer was revoked or canceled by Plaintiff's subsequent counteroffer, and by Plaintiff's unclean hands.

11.     In addition to Defendants' affirmative defenses to Plaintiff's breach of contract and quantum meruit claims, the issues to be determined at trial are whether there was an enforceable contract between the parties, whether Plaintiff performed as agreed, whether Defendants failed to perform as agreed, and whether Plaintiff suffered damages.

12.     Defendants contend that the transaction was handled as follows:

(a)     The loan transaction made the subject of this lawsuit started with Defendant Travis Hamilton's ("Hamilton's") relationship with Chuck Stumpf ("Stumpf") at XO Jet ("XO"). XO is a private jet charter company.

(b)     In approximately May 2009, Stumpf brought an opportunity to Hamilton to participate in finding a solution for XO to purchase certain aircraft and simultaneously terminate

existing leases with Laminar Portfolios, LLC, a company Hamilton understood was affiliated with Lehman Brothers ("Lehman").  This opportunity led to extensive conversations involving Hamilton with XO.  In addition, Hamilton discussed the prospective transaction with several lenders that could potentially provide financing.  In this same timeframe, Hamilton discussed this opportunity with John Berry ("Berry"), who Hamilton knows to be the President of Plaintiff TransAmerica Investment Group, Inc., d/b/a Sky Cargo Solutions, Inc. ("Sky Cargo").  Berry told Hamilton he could assist in arranging financing for the XO transaction.

(c)     Thereafter, Hamilton continued to have discussions regarding this transaction with representatives of XO and. Berry, among others.  As was typical of this type of transaction, Hamilton was required to sign non-disclosure agreements and, thereafter, XO provided certain information to him to give to Berry and the other financial institutions considering the transaction.

(d)     Sometime around the beginning or middle of May 2009, Berry told Hamilton he had a very good relationship with PNC Bank ("PNC") and that PNC would provide the financing for the XO transaction on terms acceptable to the borrowers.  At that point, Hamilton provided Berry (by telephone) with a financing scenario which would be acceptable to the borrowers.  Berry and Hamilton exchanged an email on May 13, 2009 with financing terms, including equity ratios and a fee to Plaintiff.  After some initial discussions with PNC, Hamilton was informed by Wayne Starling ("Starling") at PNC that PNC was not going to move forward with the XO transaction due to a previous loan PNC had inherited from Park National Bank.  At that time, Hamilton continued discussing financing options with other lenders, such as Siemens, Amentum Capital, and Macquarie (who all initially passed on the deal).

4

(e)     Though financing sources for the XO transaction were not firmly in place, Hamilton continued to engage in discussions with XO and with individuals associated with Lehman.  He also had several conversations with Clay Healey ("Healey"), a potential investor / facilitator for the transaction and a representative of the borrowers (ultimately, organized as limited liability companies), about the transaction and about ways to keep the deal from falling through.  In the meantime, from time to time, Berry asked Hamilton about the XO deal and, at some point, told Hamilton he had PNC ready to provide financing for the transaction.

(f)     It was Hamilton's understanding, based on information he received from PNC, that Berry prepared an "Executive Summary" of a proposed deal and presented same to PNC. The aforementioned Executive Summary was not shared with Hamilton, but was presented by Berry to PNC.  Based on Defendants' efforts through the discovery process, it appears the Executive Summary provided by Berry to PNC did not accurately reflect the terms of the proposed transaction.  If the May 13, 2009 email constituted a valid agreement between Plaintiff and Defendants, Plaintiff did not perform the contract.  Plaintiff did not provide a lender who would make the loan on the terms set out in the May 13, 2009 email, and no lender, from any source, made a loan to purchase the aircraft on those terms.

(g)     Hamilton continued to have discussions with Healey about PNC's involvement in the proposed transaction.  Healey advised Hamilton that he had a long-standing relationship with PNC because his company, AIC Title, was PNC's exclusive agent for title and escrow services on all of PNC's aircraft loans.  Thereafter, Healey, based on his preexisting relationship with PNC, began discussing the proposed transaction directly with PNC.  At that time, Hamilton had received no assurance from PNC that the financing scenario he had previously presented to Berry

by phone was acceptable to PNC, and Barry had not procured financing acceptable to the borrowers.

(h)     In July 2009, Berry and Hamilton had telephone conversations concerning PNC financing and Berry's inability to secure financing on terms acceptable to the borrowers.

(i)     Since it appeared Berry would be unable to secure financing, Hamilton proposed a way that Berry could add value to the transaction and thus make some money in connection with the proposed transaction.  In a telephone conference with Berrry, Hamilton proposed that if the deal went through, the purchasers of the aircrafts would be looking to sell the aircrafts, and if Berry located buyers for the aircraft who closed a sale, he would be paid a fee of $50,000 for each aircraft sold to a buyer he presented.  Hamilton followed the telephone conversation with a short e-mail (dated July 17, 2009), which advised Berry of the fee that would be paid if he secured buyers for the aircrafts.

(j)     Berry did not accept the proposal made to him by Hamilton in July 2009 and his contention that Hamilton's July 2009 e-mail was an offer was to compensate Berry for securing PNC financing is false.  Berry failed to procure financing from PNC or any other source that met the requirements of the May 13, 2009 email, and Berry was not involved in any efforts to find alternative financing, which was eventually successful by structuring a multi-tier financing through as second source, in addition to PNC.  Not only did Berry fail to accept Hamilton's July 17th proposal, he did not procure a single buyer for any of the six aircraft.

(k)     Several months later, on Monday, September 14, 2009, Berry sent an e-mail message to Hamilton wherein he purported to confirm the terms of a totally different agreement between Sky Cargo and Defendant Hamilton Capital Partners, LLC ("HCP").  HCP did not make

the purported agreement referenced in the September 14th email, and did not further respond to Berry.

(l)    Plaintiff did not procure or refer a loan from PNC on terms acceptable to the borrowers.  Furthermore, Plaintiff never secured financing with any lender in accordance with the e-mail proposal sent by Berry on May 13, 2009 regarding proposed financing for the subject aircraft.  Defendants never agreed to pay Plaintiff any fee for financing arrangements that did not fully comply with all of the terms and provisions of the aforementioned May 13, 2009 e-mail.

(m)    In mid to late July 2009, it was discovered that Berry had presented a summary of the proposed loan transaction to PNC that was incorrect because it misrepresented multiple aspects of the prospective transaction. In this same timeframe, the borrowers for the prospective loan transaction engaged David G. Mayer ("Mayer"), then an attorney at Patton Boggs LLP, to represent their interests in the proposed loan transaction.  Following Mayer's engagement as counsel for the borrowers, he immediately began negotiating the terms of the purchase agreements with Lehman and negotiating a loan arrangement with PNC.  Upon his engagement, Mayer promptly initiated discussions with Woody Woodring ("Woodring"), a senior aviation lending officer at PNC in Pittsburgh, to facilitate the proposed loan, at which point the aircraft loan proposal was moved from PNC's offices in Boise (the location where Berry had sent the misinformation) to their offices in Pittsburgh.

(n)    At all times relevant to this suit, Berry's role in the proposed loan transaction was extremely limited.  Moreover, his efforts jeopardized the transaction with PNC because the information shared by him with PNC was neither accurate nor acceptable to the borrowers.  Berry's limited role in making an erroneous proposal to PNC did not add value to the transaction, and would not have been the basis for the borrowers or Defendants to pay him a fee

in connection with the PNC loan that ultimately was obtained.   Additionally, Berry had no material involvement in the negotiation and finalization of the loan that ultimately closed on September 16, 2009.  In particular, Berry had no knowledge of the fact that PNC changed several material deal-points shortly before closing and he did not know the acquisition costs for the borrowers or sale price(s) for the sellers.

(o)     Hamilton personally was not paid for his efforts at, or after, closing to bring about the loan transaction with PNC.  Likewise, HCP was not paid at, or after, closing for any services or efforts provided in connection with the PNC loan.

(p)     Based on Defendants' review of documents produced in this case, they have learned that PNC paid Sky Cargo a referral fee in the amount of $60,821.25.   Notably, Defendants had no knowledge of this referral fee until after this lawsuit was filed; Berry never disclosed his arrangement with PNC to Defendants or anyone representing the borrowers.

(q)     The fact that Berry sought and obtained a fee from PNC confirms the following facts: (i) his efforts to secure financing of the deal was on behalf of PNC and not on behalf of Defendants or any of the borrowers; (ii) Berry's interest in obtaining financing from PNC for a fee from PNC was in direct conflict with the borrower's interests in securing the best possible financing, whether from PNC or others; (iii) Berry's conflict of interest was never disclosed to Defendants or the borrowers – and neither Defendants nor the borrowers acquiesced to, or waived, that conflict of interest; and (iv) Defendants would not have agreed to pay Berry (or any potential loan broker) a fee in addition to the fee they were entitled to receive from the lender.

(r)     Defendants made no material representations to Plaintiff regarding commissions for locating financing for the aircraft purchases.

(s)     Plaintiff made no material contribution of value to Defendants in connection with any transaction involving the purchase and sale of the aircraft made the subject of the May 13, 2009 email.

(t)     The offer made by Hamilton in the aforemtioned July 17, 2009 e-mail to pay Plaintiff "50k per aircraft as they are sold for your assistance in this deal" was predicated on Plaintiff securing qualified buyers for the aircraft.  Plaintiff did not, in fact, secure any qualified buyers for any of the aircraft made the subject of the July 17, 2009 e-mail.

(u)     On September 14, 2009, Plaintiff made a counteroffer in response to the July 17, 2009 e-mail wherein Plaintiff proposed to receive 50% of whatever HCP received from the transaction.  Defendants did not accept Plaintiff's September 14, 2009 counteroffer.

(v)     No funds were transferred from HCP in violation of any obligation owed Plaintiff, or with any intent to defraud Plaintiff.

<u>Admissions of Fact</u>

13.     Defendants have stipulated that the aircraft in question were sold and that each Defendant would be joint and severally liable for Plaintiff's claims.

14.     Plaintiff has stipulated that it made no effort to and did not procure, refer, or loacate any purchasers of the aircraft.

<u>Contested Issues of Law</u>

15.     There are no contested issues of law.

Exhibits

16.      Exhibits, exclusive of any rebuttal exhibits, are attached.

Witnesses

17.      Plaintiff may call the following witnesses:

(a)      John B. Berry, President of TransAmerica Investment Group, Inc. dba Sky Cargo Solutions, Inc., the Plaintiff in this case. Mr. Berry will testify as to the factual contentions in paragraphs 3 and 10 above.

(b)      C. Wayne Sterling. Senior Vice President and National Sales Manager for PNC Aviation Finance, 4355 Emerald Street; Suite 100, Boise, Idaho 83706. Mr. Sterling will testify regarding Plaintiff's role in procuring PNC's services on behalf of Defendants and regarding the consummation of the debt financing for the aircraft and regarding the sale of the aircraft.

(c)      Plaintiff may also call individual Defendant Travis M. Hamilton to testify regarding the agreements of the parties and the services rendered by Plaintiff on behalf of Defendants.

(d)      William W. Rucker, attorney of record for Plaintiff, who will testify as to Plaintiff's legal fees.

18.      Defendants may call the following witnesses:

a.      Travis M. Hamilton:  Mr. Hamilton will testify to all facts relating to the inception of the prospective loan transaction to the final loan transaction that was closed.  Mr. Hamilton will also testify regarding Mr. Berry's limited involvement in the loan transaction.

b.      David G. Mayer:  Mr. Mayer will testify regarding his role in the loan transaction, his perception of the prospective loan transaction at the time of his engagmenet, his efforts to close the loan transaction, and his dealings (with any) with Mr. Berry and with PNC.

c.      John Berry:   Mr. Berry will testify regarding his limited role in the loan transaction and his dealings with PNC.

d.      Clay Healey:  Mr. Healey will testify regarding his role in the loan transaction, his dealings with PNC, his dealings with the borrowers, and his dealings with Mr. Berry (if any).

e.      Timothy D. Zeiger, attorney of record for Defendants, who will testify as to reasonableness and necessity of Plaintiff's legal fees.

19.     If any other witnesses will be called at the trial, their names, addresses and the subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.

<u>Settlement</u>

20.     There have been no settlement negotiations and the parties have not participated in any form of alternative dispute resolution.

<u>Trial</u>

21.     (a)      This will be a non-jury trial.

(b)     The length of trial will be two days.

(c)     It is anticipated that individuals associated with PNC may be unavailable for trial due to the fact that they are located out of state and are beyond the range of subpoena. From a logistical standpoint, counsel for Defendants are located in Dallas, Texas, so they will be required to travel to Houston, Texas for trial. Additionally, Hamilton lives and works in Oklahoma and will be required to travel to Houston, Texas for trial. Finally, Hamilton's

business requires extensive travel (within the United States and internationally); therefore, he may have scheduling conflicts as a result of pre-planned and/or pre-paid business travel plans.

<u>Findings of Fact Conclusions of Law/Memorandum</u>

22. Attached.

_____          _____
Date                                                      LEE H. ROSENTHAL
                                                            UNITED STATES DISTRICT JUDGE


APPROVED

/William W Rucker/                           June 27, 2013
_____          _____
Counsel for Plaintiff                        Date


/Derek D. Rollins/                            June 27, 2013
_____          _____
Counsel for Defendants                   Date

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| **TRANSAMERICA INVESTMENT GROUP, INC. dba SKY CARGO SOLUTIONS, INC.** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:12-cv-01102** |
| **TRAVIS M. HAMILTON,** | § § | |
| **Defendant.** | § § | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

TransAmerica Investment Group, Inc., dba Sky Cargo Solutions, Inc. ("Plaintiff") asks

the Court to enter the Findings of Fact and Conclusions of Law attached hereto as Exhibit A.

Respectfully submitted,

/s/ William W. Rucker

_____

William W. Rucker
Attorney-in-Charge
SDT No. 3669
Texas Bar No. 17366500
3355 West Alabama, Suite 825
Houston, Texas 77098
Telephone (713) 528-2800
Telecopier (713) 528-5011
Attorney for Plaintiff
TransAmerica Investment Group, Inc.
Dba SkyCargo Solutions, Inc.

1

CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2013 a true and correct copy of the foregoing document was served by email to counsel for Defendants.

Derek D. Rollins                                    By email drollins@shacklaw.net
Shackelford, Melton & McKinley, LLP
Partner - Litigation
3333 Lee Parkway
Tenth Floor
Dallas, Texas 75219


/s/ William W Rucker
_____

William W. Rucker

EXHIBIT A

Findings of Fact

1.     That Plaintiff entered into a contract with Travis M. Hamilton and Hamilton Capital Partners, Ltd (collectively "Defendants") whereunder Plaintiff was to find debt financing for a portfolio of six (6) late model Citation X aircraft in a transaction in which Defendants were principals.

2.     Plaintiff thereafter contacted PNC Aviation Finance, a division of PNC Equipment Finance LLC, which is a subsidiary of PNC Bank, National Association to provide such requested financing.

3.     On July 17, 2009 Defendants and Plaintiff modified the commission that Plaintiff was to receive. Instead of the standard agreed one percent (1%) fee the parties had originally agreed on, Defendants agreed to pay Plaintiff a commission of $50,000 per aircraft ($50,000 x 6 = $300,000) with payments to be made as each aircraft was sold. The foregoing agreement set forth in a July 17, 2009 email from Defendants to Plaintiff.

4.     PNC Aviation Finance did finance the debt financing for this transaction.

5.     That each of the aircraft were sold, as stipulated by the Defendants.

6.     That Plaintiff fully performed under its contract with Defendant.

7.     That Defendants have failed to pay Plaintiff the commission to which Plaintiff was entitled.

8.     Alternatively, that Plaintiff performed a valuable service on behalf of Defendants which Defendants accepted and for which Defendants knew Plaintiff expected to be paid.

9.     That the reasonable value of Plaintiff's services was not less than Three Hundred Thousand and no/100 Dollars ($300,000.00).

10.    That Plaintiff retained the services of William W. Rucker to represent Plaintiff in the prosecution of Plaintiff's claims against Defendants.

11.    That Plaintiff has incurred reasonable legal fees and expenses of not less than $70,000.

## Conclusions of Law

12.    That this Court has jurisdiction over this dispute.

13.    That Defendants have breached their agreement with Plaintiff.

14.    Alternatively, the Plaintiff is entitled to recover under its claim for quantum meruit.

15.    As Defendants have stipulated that they are joint and severally liable for any obligations to Plaintiff, Defendants are jointly and severally liable to Plaintiff for (a) actual damages of Three Hundred Thousand and no/100 Dollars ($300,000.00); (b) with pre-judgment interest thereon; (c) for legal fees and expenses of Seventy Thousand and no/100 Dollars ($70,000.00); and (d) for costs of court.


_____                    _____
Date                                         LEE H. ROSENTHAL
                                             UNITED STATES DISTRICT JUDGE


4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT
## OF TEXAS

| | | |
|---|---|---|
| **TRANSAMERICA INVESTMENT GROUP, INC. dba SKY CARGO SOLUTIONS, INC.,** | § § § | **CIVIL ACTION NO.  4:12-CV-01102** |
| | § | |
| **Plaintiff,** | § § | **LEE H. ROSENTHAL JUDGE** |
| | § | |
| **V.** | § § | Lisa Eddins _____ |
| | § | Courtroom Clerk       **Court Reporter** |
| **TRAVIS M. HAMILTON,** | § § | |
| **Defendant.** | § | |

## EXHIBIT LIST OF PLAINTIFF

| NO. | DESCRIPTION | OFFER | OBJ | ADMIT | NO/ADM |
|-----|-------------|-------|-----|-------|--------|
| 1 | May 13, 2009 email setting forth the terms of SkyCargo's original commission agreement. | | | | |
| 2 | July 17, 2009 email from Defendant setting forth the terms of amended agreement. | | | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TRANSAMERICA INVESTMENT | § | |
| GROUP, INC., d/b/a Sky Cargo Solutions, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION 4:12-CV-01102 |
| | § | |
| TRAVIS M. HAMILTON, and | § | |
| HAMILTON CAPITAL PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW

1.      The loan transaction made the subject of this lawsuit started with Defendant Travis Hamilton's ("Hamilton's") relationship with Chuck Stumpf ("Stumpf") at XO Jet ("XO"). XO is a private jet charter company.

2.      In approximately May 2009, Stumpf brought an opportunity to Hamilton to participate in finding a solution for XO to purchase certain aircraft and simultaneously terminate existing leases with Laminar Portfolios, LLC, a company Hamilton understood was affiliated with Lehman Brothers ("Lehman"). This opportunity led to extensive conversations involving Hamilton with XO. In addition, Hamilton discussed the prospective transaction with several lenders that could potentially provide financing. In this same timeframe, Hamilton discussed this opportunity with John Berry ("Berry"), who Hamilton knows to be the President of Plaintiff TransAmerica Investment Group, Inc., d/b/a Sky Cargo Solutions, Inc. ("Sky Cargo"). Berry told Hamilton he could assist in arranging financing for the XO transaction.

3.      Thereafter, Hamilton continued to have discussions regarding this transaction with representatives of XO and. Berry, among others. As was typical of this type of transaction,

Hamilton was required to sign non-disclosure agreements and, thereafter, XO provided certain information to him to give to Berry and the other financial institutions considering the transaction.

4.      Sometime around the beginning or middle of May 2009, Berry told Hamilton he had a very good relationship with PNC Bank ("PNC") and that PNC would provide the financing for the XO transaction on terms acceptable to the borrowers.  At that point, Hamilton provided Berry (by telephone) with a financing scenario which would be acceptable to the borrowers. Berry and Hamilton exchanged an email on May 13, 2009 with financing terms, including equity ratios and a fee to Plaintiff.  After some initial discussions with PNC, Hamilton was informed by Wayne Starling ("Starling") at PNC that PNC was not going to move forward with the XO transaction due to a previous loan PNC had inherited from Park National Bank.  At that time, Hamilton continued discussing financing options with other lenders, such as Siemens, Amentum Capital, and Macquarie (who all initially passed on the deal).

5.      Though financing sources for the XO transaction were not firmly in place, Hamilton continued to engage in discussions with XO and with individuals associated with Lehman.  He also had several conversations with Clay Healey ("Healey"), a potential investor / facilitator for the transaction and a representative of the borrowers (ultimately, organized as limited liability companies), about the transaction and about ways to keep the deal from falling through.  In the meantime, from time to time, Berry asked Hamilton about the XO deal and, at some point, told Hamilton he had PNC ready to provide financing for the transaction.

6.      It was Hamilton's understanding, based on information he received from PNC, that Berry prepared an "Executive Summary" of a proposed deal and presented same to PNC. The aforementioned Executive Summary was not shared with Hamilton, but was presented by

Berry to PNC.   Based on Defendants' efforts through the discovery process, it appears the Executive Summary provided by Berry to PNC did not accurately reflect the terms of the proposed transaction.  If the May 13, 2009 email constituted a valid agreement between Plaintiff and Defendants, Plaintiff did not perform the contract.  Plaintiff did not provide a lender who would make the loan on the terms set out in the May 13, 2009 email, and no lender, from any source, made a loan to purchase the aircraft on those terms.

      7.     Hamilton continued to have discussions with Healey about PNC's involvement in the proposed transaction.  Healey advised Hamilton that he had a long-standing relationship with PNC because his company, AIC Title, was PNC's exclusive agent for title and escrow services on all of PNC's aircraft loans.  Thereafter, Healey, based on his preexisting relationship with PNC, began discussing the proposed transaction directly with PNC.  At that time, Hamilton had received no assurance from PNC that the financing scenario he had previously presented to Berry by phone was acceptable to PNC, and Barry had not procured financing acceptable to the borrowers.

      8.     In July 2009, Berry and Hamilton had telephone conversations concerning PNC financing and Berry's inability to secure financing on terms acceptable to the borrowers.

      9.     Since it appeared Berry would be unable to secure financing, Hamilton proposed a way that Berry could add value to the transaction and thus make some money in connection with the proposed transaction.  In a telephone conference with Berry, Hamilton proposed that if the deal went through, the purchasers of the aircrafts would be looking to sell the aircrafts, and if Berry located buyers for the aircraft who closed a sale, he would be paid a fee of $50,000 for each aircraft sold to a buyer he presented.  Hamilton followed the telephone conversation with a

short e-mail (dated July 17, 2009), which advised Berry of the fee that would be paid if he secured buyers for the aircrafts.

10.     Berry did not accept the proposal made to him by Hamilton in July 2009 and his contention that Hamilton's July 2009 e-mail was an offer was to compensate Berry for securing PNC financing is false.  Berry failed to procure financing from PNC or any other source that met the requirements of the May 13, 2009 email, and Berry was not involved in any efforts to find alternative financing, which was eventually successful by structuring a multi-tier financing through as second source, in addition to PNC.  Not only did Berry fail to accept Hamilton's July 17th proposal, he did not procure a single buyer for any of the six aircraft.

11.     Several months later, on Monday, September 14, 2009, Berry sent an e-mail message to Hamilton wherein he purported to confirm the terms of a totally different agreement between Sky Cargo and Defendant Hamilton Capital Partners, LLC ("HCP").  HCP did not make the purported agreement referenced in the September 14th email, and did not further respond to Berry.

12.     Plaintiff did not procure or refer a loan from PNC on terms acceptable to the borrowers.  Furthermore, 4444Plaintiff never secured financing with any lender in accordance with the e-mail proposal sent by Berry on May 13, 2009 regarding proposed financing for the subject aircraft.  Defendants never agreed to pay Plaintiff any fee for financing arrangements that did not fully comply with all of the terms and provisions of the aforementioned May 13, 2009 e-mail.

13.     In mid to late July 2009, it was discovered that Berry had presented a summary of the proposed loan transaction to PNC that was incorrect because it misrepresented multiple aspects of the prospective transaction. In this same timeframe; the borrowers for the prospective

loan transaction engaged David G. Mayer ("Mayer"), then an attorney at Patton Boggs LLP, to represent their interests in the proposed loan transaction.  Following Mayer's engagement as counsel for the borrowers, he immediately began negotiating the terms of the purchase agreements with Lehman and negotiating a loan arrangement with PNC.  Upon his engagement, Mayer promptly initiated discussions with Woody Woodring ("Woodring"), a senior aviation lending officer at PNC in Pittsburgh, to facilitate the proposed loan, at which point the aircraft loan proposal was moved from PNC's offices in Boise (the location where Berry had sent the misinformation) to their offices in Pittsburgh.

14.     At all times relevant to this suit, Berry's role in the proposed loan transaction was extremely limited.  Moreover, his efforts jeopardized the transaction with PNC because the information shared by him with PNC was neither accurate nor acceptable to the borrowers. Berry's limited role in making an erroneous proposal to PNC did not add value to the transaction, and would not have been the basis for the borrowers or Defendants to pay him a fee in connection with the PNC loan that ultimately was obtained.  Additionally, Berry had no material involvement in the negotiation and finalization of the loan that ultimately closed on September 16, 2009.  In particular, Berry had no knowledge of the fact that PNC changed several material deal-points shortly before closing and he did not know the acquisition costs for the borrowers or sale price(s) for the sellers.

15.     Hamilton personally was not paid for his efforts at, or after, closing to bring about the loan transaction with PNC.  Likewise, HCP was not paid at, or after, closing for any services or efforts provided in connection with the PNC loan.

16.     Based on Defendants' review of documents produced in this case, they have learned that PNC paid Sky Cargo a referral fee in the amount of $60,821.25.  Notably,

Defendants had no knowledge of this referral fee until after this lawsuit was filed; Berry never disclosed his arrangement with PNC to Defendants or anyone representing the borrowers.

17.     The fact that Berry sought and obtained a fee from PNC confirms the following facts: (i) his efforts to secure financing of the deal was on behalf of PNC and not on behalf of Defendants or any of the borrowers; (ii) Berry's interest in obtaining financing from PNC for a fee from PNC was in direct conflict with the borrower's interests in securing the best possible financing, whether from PNC or others; (iii) Berry's conflict of interest was never disclosed to Defendants or the borrowers – and neither Defendants nor the borrowers acquiesced to, or waived, that conflict of interest; and (iv) Defendants would not have agreed to pay Berry (or any potential loan broker) a fee in addition to the fee they were entitled to receive from the lender.

18.     Defendants made no material representations to Plaintiff regarding commissions for locating financing for the aircraft purchases.

19.     Plaintiff made no material contribution of value to Defendants in connection with any transaction involving the purchase and sale of the aircraft made the subject of the May 13, 2009 email.

20.     The offer made by Hamilton in the aforementioned July 17, 2009 e-mail to pay Plaintiff "50k per aircraft as they are sold for your assistance in this deal" was predicated on Plaintiff securing qualified buyers for the aircraft.  Plaintiff did not, in fact, secure any qualified buyers for any of the aircraft made the subject of the July 17, 2009 e-mail.

21.     On September 14, 2009, Plaintiff made a counteroffer in response to the July 17, 2009 e-mail wherein Plaintiff proposed to receive 50% of whatever HCP received from the transaction.  Defendants did not accept Plaintiff's September 14, 2009 counteroffer.

22.     No funds were transferred from HCP in violation of any obligation owed Plaintiff, or with any intent to defraud Plaintiff.

23.     Any finding of fact that includes conclusions of law shall be deemed to be an additional separate conclusion of law.

## CONCLUSIONS OF LAW

24.     This court has jurisdiction and venue over this matter.

25.     Plaintiff failed to comply with the terms of the May 13, 2009 email; therefore, to the extent the May 13, 2009 email constitutes an enforceable agreement, it cannot constitute valid consideration for any promise by Defendants to pay Plaintiff.

26.     The July 17, 2009 email, if it were to be an enforceable agreement, fails for lack of consideration.  Plaintiff performed no services and gave no consideration for the July 17, 2009 offer, and if the May 13, 2009 email constituted a valid agreement, Plaintiff's failure to perform the agreement does not give rise to valid consideration for payment under the July 17, 2009 email offer.

27.     Plaintiff did not accept the July 17, 2009 email offer, but instead countered on September 14, 2009 with a different proposal.  The counteroffer is a rejection of the July17, 2009 offer, and therefore Plaintiff cannot recover based on that rejected offer.

28.     Plaintiff does not claim that the September 14, 2009 counteroffer was accepted and has not sued on that counteroffer; therefore, Plaintiff cannot recover based on the September 14, 2009 counteroffer.

29.     The July 17, 2009 email offer is not the complete expression of the parties' agreement - the email offer was conditioned on Plaintiff securing buyers for the aircraft and

Plaintiff did not secure any buyers.  Therefore, Plaintiff failed to perform, in whole or in part, under the July 17, 2009 email, assuming it was a valid contract.

30.     Plaintiff's efforts in connection with the loan transaction are, by his own admission, merely to refer the borrower to the lender.  The lender paid Plaintiff an agreed referral fee.  Therefore Plaintiff suffered no damage, was not defrauded, and Defendants were not unjustly enriched.

31.     Plaintiff's failure to disclose the existence of a referral fee agreement with a potential lending source was an intentional concealment of a material fact, which Plaintiff knew would cause Defendant to refuse to agree to pay Plaintiff any fee, and Plaintiff concealed the fact to induce Defendants to make a payment to Plaintiff that they would not have made had they had full knowledge of the relevant facts.

32.     Plaintiff should take nothing for all of its claims and causes of action.

33.     Any conclusion of law that includes findings of fact shall be deemed to be an additional separate finding of fact.

Respectfully submitted,

SHACKELFORD, MELTON & McKINLEY, LLP

By:____/s/ Derek D. Rollins_____
        Derek D. Rollins
        State Bar No. 24029803
        SDT No. 32108
        Timothy D. Zeiger
        State Bar No. 22255950

3333 Lee Parkway, Tenth Floor
Dallas, Texas 75219
T: 214.780.1400 | F: 214.780.1401
Email: drollins@shacklaw.net
          tzeiger@shacklaw.net

ATTORNEYS FOR DEFENDANTS,

TRAVIS M. HAMILTON and
HAMILTON CAPITAL PARTNERS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was sent electronically by the Clerk of Court, and via email pursuant to an agreement between counsel, on June ____, 2013, to the following:

William W. Rucker, Esq.
Attorney-In-Charge
3355 West Alabama, Suite 825
Houston, Texas 77098
T: 713.528.2800 | F: 713.528.5011
*Attorney for Plaintiff,*
*TransAmerica Investment Group, Inc.*


_____ */s/ Derek D. Rollins*_____
Derek D. Rollins

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT**
**OF TEXAS**

| | | |
|---|---|---|
| TRANSAMERICA INVESTMENT GROUP, INC. dba SKY CARGO SOLUTIONS, INC., | §<br>§<br>§<br>§ | CIVIL ACTION NO.  4:12-CV-01102 |
| Plaintiff, | §<br>§ | LEE H. ROSENTHAL<br>JUDGE |
| V. | §<br>§ | Lisa Eddins           _____ |
| TRAVIS M. HAMILTON, | §<br>§ | Courtroom Clerk        Court Reporter |
| Defendant. | §<br>§ | |

**EXHIBIT LIST OF DEFENDANTS**

| NO. | DESCRIPTION | OFFER | OBJ | ADMIT | NO/ADM |
|---|---|---|---|---|---|
| 1 | May 13, 2009 email setting forth the terms of SkyCargo's original commission agreement. | | | | |
| 2 | July 17, 2009 email setting forth the terms of amended agreement. | | | | |
| 3 | September 14, 2009 email regarding closing | | | | |
| 4 | September 3, 2009 email from John Berry to Wayne Starling | | | | |
| 5 | September 14, 2009 email from John Berry to Wayne Starling | | | | |